PER A. RAMFJORD, OSB No. 934024
per.ramfjord@stoel.com
REILLEY D. KEATING, OSB No. 073762
reilley.keating@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

*Attorneys for Defendant 3M Company*

PILAR C. FRENCH, OSB No. 962880
frenchp@lanepowell.com
RYAN T. O'HOLLAREN, OSB No. 231160
ohollarenr@lanepowell.com
LANE POWELL PC
601 S.W. Second Avenue, Suite 2100
Portland, Oregon 97204
Telephone: 503.778.2100
Facsimile: 503.778.2200

*Attorneys for Defendants Tyco Fire Products LP
    and Chemguard, Inc.*

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| STATE OF OREGON, by and through Ellen F. Rosenblum, Attorney General,<br><br>            Plaintiff,<br><br>    v.<br><br>3M COMPANY; AGC CHEMICALS AMERICAS, INC.; AMEREX CORPORATION; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER FIRE & SECURITY AMERICAS | Case No.:  3:23-cv-0974<br><br>**NOTICE OF REMOVAL**<br><br>(Federal Officer Removal Under 28 U.S.C. § 1442(a)(1))<br><br>(Multnomah County Circuit Court Case No. 23CV21902)<br><br>DEMAND FOR JURY TRIAL |

Page 1 –     NOTICE OF REMOVAL

CORPORATION; CARRIER GLOBAL
CORPORATION; CHEMDESIGN
PRODUCTS, INC.; CHEMGUARD, INC.;
CLARIANT CORPORATION; CORTEVA,
INC.; DUPONT DE NEMOURS, INC.;
DYNAX CORPORATION; EIDP, INC., F/K/A
E.I. DU PONT DE NEMOURS AND
COMPANY; KIDDE PLC, INC.; NATIONAL
FOAM, INC.; THE CHEMOURS COMPANY;
TYCO FIRE PRODUCTS LP; and ABC
CORPORATIONS 1-10 (Names Fictitious),

                Defendants.

---

**TO:**      **THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF OREGON, PORTLAND DIVISION,**

**AND TO:**  **PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446,

Defendants 3M Company ("3M"), Tyco Fire Products LP ("Tyco"), and Chemguard, Inc.

("Chemguard") (collectively, "Removing Defendants"), remove this action from the Circuit

Court of the State of Oregon, in and for the County of Multnomah, to the United States District

Court for the District of Oregon, Portland Division. Removing Defendants are entitled to remove

this action based on federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), and as grounds for

removal, state as follows.

## I.  PRELIMINARY STATEMENT

1.      Plaintiff State of Oregon ("State") seeks to hold Removing Defendants and other

Defendants liable for their alleged conduct in designing, manufacturing, and selling aqueous

film-forming foams ("AFFF") that Plaintiff alleges were used for firefighting and fire-training in

Oregon, thereby resulting in purported contamination. Specifically, the State alleges that

Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS"), including

Page 2 –    NOTICE OF REMOVAL

perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS"), and that the use of PFAS-containing AFFF has caused claimed damages to the State's natural resources, property, and citizens.

2.    At least some of the AFFF that allegedly gives rise to the State's claims has been manufactured by a select group of federal contractors (including Removing Defendants) in accordance with the military's rigorous specifications ("MilSpec AFFF"). According to the State's own allegations in the Complaint, military facilities and "Part 139" civilian airports in Oregon are sources of the AFFF that allegedly have caused the State's injuries. Current and former military facilities are or were required to use MilSpec AFFF appearing on the Department of Defense ("DOD") Qualified Products List. "Part 139" airports are also required by federal law to stock and use MilSpec AFFF. Under the federal "government contractor" defense recognized by the U.S. Supreme Court in *Boyle v. United Technologies. Corp.*, 487 U.S. 500 (1988), Removing Defendants are immune to tort liability for their design and manufacture of MilSpec AFFF and for their provision of warnings related to MilSpec AFFF.

3.    Removing Defendants are entitled to remove this action under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), to have their federal defense adjudicated in a federal forum. Numerous courts, including the court overseeing the *In re AFFF Products Liability Litigation* MDL ("MDL") in the District of South Carolina, have held that AFFF manufacturers properly removed cases on the ground that the plaintiffs' claims plausibly arose at least in part from MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard*, No. 1:20-cv-1080, 2021 WL 744683, at *4 (W.D. Mich. Jan. 6, 2021); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-2873 ("*In re AFFF*"), 2019 WL 2807266, at *2 (D.S.C. May 24, 2019) ("*AFFF I*"); *Ayo v. 3M Comp.*, No. 18-cv-0373, 2018 WL 4781145, at *6-15 (E.D.N.Y. Sept. 30, 2018). Such

removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## II. BACKGROUND

4.     On May 31, 2023, the State filed this action in the Circuit Court of the State of Oregon in and for the County of Multnomah, bearing Case No. 23CV21902. A true and correct copy of the Complaint is attached hereto as **Exhibit A**. (Declaration of Reilley D. Keating in Support of Notice of Removal ("Keating Decl.") ¶ 2.) On June 5, 2023, copies of the Complaint and Summons were served on 3M and on Tyco, and on June 2, 2023, a copy of the Complaint and Summons was served on Chemguard. (*Id*. ¶ 3.) True and correct copies of the Summonses served on Removing Defendants are attached hereto as **Exhibit B**. A true and correct copy of the state-court docket is attached hereto as **Exhibit C.**

5.     The State brings this action to hold Defendants (including Removing Defendants) liable for alleged PFAS contamination in Oregon resulting in whole or in part from the use of AFFF. *See, e.g.*, Complaint ¶¶ 2-3, 5, 8-9. The State alleges that Defendants (including Removing Defendants) manufactured, marketed, and sold PFAS-containing AFFF that were used in Oregon, *see, e.g.*, *id*. ¶¶ 12, 22, 31, and that as a result, PFAS have been released in Oregon, allegedly harming the environment and impacting public health, *see, e.g.*, *id*. ¶¶ 59-61, 70-71, 137.

6.     The State expressly alleges that Removing Defendants' AFFF products were used and released at federal military facilities in Oregon—including at Kingsley Field Air National Guard Base, at various sites used by the Air National Guard at the Portland International Airport, and at the Central Oregon Unit Training Equipment Site, the Salem AASF–McNary Field, the Lane County Air Force Reserve Command FMS5, the Bends National Guard Site (COTEF), and

the Christmas Valley Radar Site—and that that purportedly has resulted in PFAS contamination. *See id.* ¶¶ 65, 97, 137-138, 139, 143-145, 148.

7.      The State also alleges that AFFF was used at airports in Oregon, purportedly resulting in PFAS contamination—including at the Portland International Airport. *See id*. ¶¶ 65, 97, 139-142, 148. The State asserts claims against Removing Defendants and other Defendants for public nuisance (*id.*, Claim 1); trespass (*id.*, Claim 2); equitable indemnity (*id.*, Claim 3); and unjust enrichment (*id.*, Claim 4).[1] Among other remedies, the State seeks to hold Removing Defendants "liable for the cost of investigation, remediation, and restoration of all property, soils, sediments, waters, and other natural resources contaminated with PFAS from Defendants' AFFF, as well as for the State's loss of past, present, and future use of such contaminated natural resources." *Id*. ¶ 151; *see also id*. at pp. 77-78 (Request for Relief).

### III.  THE PROCEDURAL REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. §§ 1441 AND 1446 ARE MET

8.      Venue for the removal of this action is proper in this Court pursuant to 28 U.S.C. §§ 117 and 1441(a) and Local Rule 3-2(a)(1) because the Multnomah County Circuit Court is located within the District of Oregon, Portland Division.

9.      Removing Defendants are not required to notify or obtain the consent of any other Defendant in this action to remove this action as a whole under 28 U.S.C. § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

10.      Pursuant to 28 U.S.C. § 1446(a), a copy of the Complaint and Summons is

---

[1] The State also asserts fraudulent transfer and voidable transaction claims against certain Defendants but not the Removing Defendants. *See* Complaint, Claims 5 to 8.

attached hereto. (Keating Decl. ¶¶ 2-3 & **Exhibits A-B**.) No other process, pleadings, or orders have been served on Removing Defendants in the state-court proceedings. (Keating Decl. ¶ 4.) Copies of any other proofs of service filed in the State Court Action with respect to any other Defendants (other than the Removing Defendants) are attached hereto as **Exhibit D.** (Keating Decl. ¶ 4.)

11.    3M was served with the Summons and Complaint on June 5, 2023. (Keating Decl. ¶ 3 & **Exhibit B**.) Tyco was served with the Summons and Complaint on June 5, 2023. (*Id.*) Chemguard was served with the Summons and Complaint on June 2, 2023. (*Id.*) This Notice of Removal is timely filed under 28 U.S.C. § 1446(b).

12.    Pursuant to 28 U.S.C. § 1446(d), Removing Defendants are serving a copy of this Notice of Removal on all other parties to this case, and Removing Defendants are filing a copy with the Clerk of the Multnomah County Circuit Court. (Keating Decl., ¶ 5.)

13.    By filing a Notice of Removal in this matter, Removing Defendants do not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Removing Defendants specifically reserve the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

14.    Removing Defendants reserve the right to amend or supplement this Notice of Removal.

15.    If any question arises as to the propriety of the removal of this action, Removing Defendants request the opportunity to present a brief and oral argument in support of removal.

### IV.  REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1)

16.    Removal here is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. Removal is

appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority, and those actions have a nexus with the plaintiff's claims; and (c) it can assert a "colorable" federal defense. *Durham*, 445 F.3d at 1251; *see* 28 U.S.C. § 1442(a)(1) (providing for the removal of actions against the United States and its agencies and officers when the actions are "for or relating to any act under color of such office"); *see also, e.g.*, *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Goncalves ex rel. Goncalves v. Rady Children's Hosp. S.D.*, 865 F.3d 1237, 1244 (9th Cir. 2017); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017).

17.    Removal rights under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) "protect[s] federal officers" and "guarantee[s] its agents access to a federal forum if they are sued or prosecuted." *Durham*, 445 F.3d at 1253. This important federal policy "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). To the contrary, the statute must be "liberally construed" in favor of removal. *Durham*, 445 F.3d at 1252 (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).

18.    All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal avers that the plaintiff's injuries were caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel*, 2021 WL 744683, at *4 (denying motion to remand in AFFF case against AFFF manufacturers); *Ayo*, 2018 WL 4781145, at *6-15 (denying motion to remand and finding that federal officer removal was proper in lawsuit against manufacturers of MilSpec AFFF). The

court overseeing the *In re AFFF* MDL has found on numerous occasions that removal under § 1442(a)(1) is proper where the notice of removal avers that plaintiffs' claimed injuries were caused, at least in part, by MilSpec AFFF. *See In re AFFF*, 2019 WL 2807266, at *2-3 (federal officer removal statute "entitl[ed] [AFFF manufacturers] to have removed New York's tort claims and [their] federal defense to federal court"); Order at 3-5, *In re AFFF*, ECF No. 320 (Sept. 27, 2019) ("*AFFF II*"); Order at 3-6, *In re AFFF*, ECF No. 325 (Oct. 1, 2019) ("*AFFF III*"). Given its experience with the claims and defenses in the AFFF litigation, the MDL Court's holdings clearly show that this case, too, has been properly removed to federal court.[2]

A.    **MilSpec AFFF**

19.    Since the late 1960s/early 1970s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF—its researchers were granted the first AFFF patent in 1966.[3] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[4]

20.    MilSpec AFFF is military equipment whose manufacture and sale is governed by rigorous MilSpecs created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of

---

[2] Following removal, Removing Defendants intend to designate this action for transfer to the MDL.

[3] U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[4] U.S. Navy, NRL/MR/1001-06-8951, U.S. Naval Research Lab., *The U.S. Naval Research Laboratory (1923-2005): Fulfilling the Roosevelts' Vision for American Naval Power*, at 37 (June 30, 2006) ("*Fulfilling the Roosevelts' Vision*"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

times since then.[5] All MilSpec AFFF products must be "qualified for listing on the applicable

Qualified Products List" prior to military procurement.[6] Prior to such listing, a "manufacturer's

. . . products are examined, tested, and approved to be in conformance with specification

requirements."[7] The MilSpec designates Naval Sea Systems Command as the agency responsible

for applying these criteria and determining whether AFFF products satisfy the MilSpec's

requirements.[8] After a product is added to the Qualified Products List, "[c]riteria for retention of

qualification are applied on a periodic basis to ensure continued integrity of the qualification

status."[9] Naval Sea Systems Command "reserves the right to perform any of the [quality

assurance] inspections set forth in the specification where such inspections are deemed necessary

to ensure supplies and services conform to prescribed requirements."[10]

21.    From its inception until 2019, the MilSpec for AFFF included the express

requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants

are PFAS, and that category includes PFOA, PFOS, and their precursors—among the

compounds expressly alleged to be at issue in the Complaint here.[11] The current MilSpec

---

[5] *See* Mil-F-24385 (1969). The November 1969 MilSpec and all its revisions and amendments
through April 2020 (MIL-PRF-24385F(4)) are available at https://tinyurl.com/yxwotjpg.

[6] MIL-PRF-24385F(4) § 3.1 (2020).

[7] DOD SD-6, Provisions Governing Qualification at 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[8] *See, e.g.*, MIL-PRF-24385F(4) at 18 (2020). The cited MilSpec designates Naval Sea Systems
Command as the "Preparing Activity." The "Preparing Activity" is responsible for qualification.
(*See* DOD SD-6, *supra* note 7, at 3.)

[9] DOD SD-6, *supra* note 7, at 1.

[10] *See, e.g.*, MIL-PRF-24385F(4) § 4.1 (2020).

[11] *See* Mil-F-24385 § 3.2 (1969); MIL-PRF-24385F(2) § 3.2 (2017). In May 2019, the MilSpec
was revised to drop the explicit requirement that the surfactants in the product be "fluorocarbon."
*See* MIL-PRF-24385F(3) § 3.2 (2019). But under current technology, the only AFFF products
capable of meeting the MilSpec's stringent performance requirements—and the only ones listed

expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.[12] Indeed, the current MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."[13]

22.    So-called "Part 139" airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft. *See* 14 C.F.R. § 139.1 (2019). The federal government requires Part 139 airports to use MilSpec AFFF. On July 8, 2004, the Federal Aviation Administration ("FAA") issued Advisory Circular 150/5210-6D, which stated that "AFFF agents [used by Part 139 airports] must meet the requirements of Mil-F-24385F."[14] Although the preamble indicated that the circular was for guidance only, on February 8, 2006, the FAA issued a CertAlert clarifying that the MilSpec AFFF requirement was, in fact, mandatory and that "[a]ny AFFF purchased after July 1, 2006 by an airport operator certified under Part 139 must meet [Mil-F-24385F]."[15] The FAA explained:

> There are several reasons for this requirement. First of all, AFFF
> has to be compatible when mixed. AFFF manufactured by different
> manufacturers, although meeting the UL 162 standard, may not be
> compatible. AFFF meeting the Military Specification will always
> be compatible with other Military Specification AFFF no matter
> the manufacturer. Second, AFFF meeting the military specification
> requires less agent than AFFF meeting UL 162 to extinguish the
> same size fire. Finally, the requirement to use Mil Spec is in
> concert with the National Fire Protection Association National Fire

---

on the military's Qualified Product List—are those containing fluorocarbon surfactants. Thus, as a practical matter, the MilSpec still requires fluorocarbon surfactants.

[12] *See* MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).

[13] *Id.* § 6.6.

[14] *See* Advisory Circular 150/5210-6D at 4, Chapter 6, https://tinyurl.com/yxpk87ky.

[15] *See* DOT/FAA/TC-14/22, Impact of Alternative Fuels Present in Airports on Aircraft Rescue and Firefighting Response at 25-26 (Aug. 2014), https://tinyurl.com/rt35dgp.

Code 403, paragraph 5.1.2.1.[16]

23.    On September 1, 2016, the FAA issued a superseding CertAlert, which reiterated that "Airport operators must ensure any AFFF purchased after July 1, 2006, meets Mil-Spec standards."[17] Thus, from July 1, 2006, to present, airport operators holding an FAA Airport Operating Certificate have been required to purchase MilSpec AFFF for use.

24.    The State expressly alleges that its injuries have arisen in part from the use of AFFF at current and former U.S. military facilities in Oregon. *See, e.g.*, Complaint ¶¶ 2, 65, 97, 137-149. Those military facilities where AFFF use purportedly has resulted in alleged PFAS contamination purportedly include Kingsley Field Air National Guard Base, *id.* ¶¶ 65, 143-144, as well as sites at or near Portland International Airport including the Portland Air National Guard Base, *id.* ¶¶ 139-140. Other military facilities where AFFF allegedly have resulted in PFAS contamination include the Central Oregon Unit Training Equipment Site, the Salem AASF–McNary Field, the Lane County Air Force Reserve Command FMS5, the Bends National Guard Site (COTEF), and the Christmas Valley Radar Site. *Id.* ¶ 145. Since the 1970s, all AFFF used at those facilities has been MilSpec AFFF. Pursuant to contracts with the U.S. government, Removing Defendants and other Defendants sold AFFF to the military for use in Oregon. *See id.* ¶ 97.

25.    The Complaint also alleges that the State's injuries have arisen in part from the use of AFFF at airports in Oregon. *Id.* ¶¶ 2, 8, 65, 97, 139, 143, 148. Seven airports in Oregon are Part 139 airports, including the Portland International Airport as well as the Crater

---

[16] *Id.*
[17] FAA, Cert Alert No. 16-05: Update on Mil-Spec Aqueous Film Forming Foam (AFFF) at 2 (Sept. 1, 2016), https://www.faa.gov/sites/faa.gov/files/airports/airport_safety/certalerts/part-139-cert-alert-16-05-Mil-Spec-AFFF-website-update.pdf.

Lake/Klamath Regional Airport at Klamath Falls.[18] The Complaint specifically alleges PFAS contamination from AFFF at and near the Portland International Airport, *id.* ¶¶ 8, 139-142, and the Klamath Falls Airport, *id.* ¶ 143. Some or all of the Part 139 airports in Oregon may be sources of alleged AFFF-derived PFAS contamination that gives rise to the State's claimed injuries. Since at least 2006, the AFFF used at those airports has been MilSpec AFFF, some of which has been designed and manufactured by Tyco and Chemguard acting under federal direction.

26.     The State's claims in this case therefore arise, at least in part, from the use, storage, or disposal of MilSpec AFFF at military bases and airports. Accordingly, Removing Defendants are entitled to remove this case as a whole under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). As shown below, all the elements of federal officer jurisdiction are met when a plaintiff asserts claims based on alleged contamination caused at least in part by MilSpec AFFF.

**B.     All The Requirements Of 28 U.S.C. § 1442(a)(1) Are Satisfied**

**1.     The "Person" Requirement Is Satisfied**

27.     The first requirement for removal under the federal officer removal statute is satisfied because Removing Defendants 3M (a corporation), Tyco (a limited partnership), and Chemguard (a corporation) are "persons" under the statute. For purposes of § 1442(a)(1), the term "person" includes "'companies, associations, firms, [and] partnerships.'" *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *see Goncalves*, 865 F.3d at 1244.

---

[18] *See* Part 139 Airport Certification Status List (Excel file), available at https://www.faa.gov/airports/airport_safety/part139_cert/part_139_airport_certification_status_list.

120140551.1 0033656-00196

### 2.     The "Acting Under Color of Federal Office" Requirement Is Satisfied

28.     The second requirement is that the defendant has acted under a federal officer, and that those actions have a nexus with the plaintiff's claims. *See Durham*, 445 F.3d at 1251; *see also* 28 U.S.C. § 1442(a)(1).

29.     A defendant is "acting under" a federal officer when it assists or helps carry out the duties or tasks of a federal officer. *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 152 (2007); *Goncalves*, 865 F.3d at 1245. The words "acting under" are to be interpreted broadly. *Id.* Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. Rather, "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer*, 860 F.3d at 255.

30.     Removing Defendants were "acting under" a federal officer here because the alleged PFAS contamination that is the focus of the State's claims stems in part from MilSpec AFFF, a vital product "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members). The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in

formulations."[19] Accordingly, the military has long depended upon outside contractors like Removing Defendants to develop and supply AFFF. *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8-9 (holding that Defendants were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *AFFF I*, 2019 WL 2807266, at *2 (finding "acting under" requirement was satisfied because AFFF manufacturer defendant "has demonstrated that it was manufacturing the product under the U.S. military's guidance"); *see also AFFF II* at 3-5; *AFFF III* at 3-6. If Removing Defendants and other manufacturers did not manufacture and supply MilSpec AFFF, the government would have to manufacture and supply the product itself.

31.     In designing, manufacturing, and supplying the PFAS-containing MilSpec AFFF products at issue, Removing Defendants acted under the direction and control of one or more federal officers. Specifically, Removing Defendants acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.[20] Until recently, those specifications expressly required the use of PFAS ("fluorocarbon surfactants") in MilSpec AFFF. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DOD.[21]

32.     Like the "acting under" requirement, the "hurdle erected by" the requirement that

---

[19] *Fulfilling the Roosevelts' Vision* at 37.
[20] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 5, *supra*.
[21] *See* DOD SD-6, *supra* note 7, at 1.

the defendant's challenged actions were under color of federal office—sometimes called the

nexus or connection requirement—"is quite low." *Isaacson*, 517 F.3d at 137; *accord Goncalves*,

865 F.3d at 1245.[22] It is sufficient for a defendant to establish a connection or association

between the lawsuit and the federal office. *See Sawyer*, 860 F.3d at 258 (explaining that 28

U.S.C. § 1442 permits removal of actions "for *or relating to* any act under color of [federal]

office"); *Papp*, 842 F.3d at 813; *see also Isaacson*, 517 F.3d at 137-38 (explaining that it is

sufficient if the act that allegedly caused or contributed to the plaintiff's injuries occurred while

the defendant was performing its official duties).

33.      Here, the State's claims against Removing Defendants arise at least in part from

alleged PFAS contamination from MilSpec AFFF which has been used at military facilities and

airports in Oregon. *See supra* ¶¶ 24-25. The military specifications have expressly or implicitly

required the use of PFAS in the product. As a result, the State's claims against Removing

Defendants relate to their acts taken under color of federal office. *See Ayo*, 2018 WL 4781145, at

*9 ("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF and the

design and manufacture of AFFF for the government."); *accord AFFF I*, 2019 WL 2807266, at

*3 ("Here, [plaintiff's] claims arise out of use of AFFF products that it claims [the defendant]

manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court

. . . finds that the causation element of federal officer removal is satisfied here."); *AFFF II* at 5;

*AFFF III* at 5-6.

34.      In assessing whether the required nexus exists, courts "credit the defendants'

theory of the case." *Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014); *see also Isaacson*,

---

[22] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011).

517 F.3d at 137; *Nessel*, 2021 WL 744683, at *3 (explaining that "Plaintiffs cannot decide what

defense Defendants might present"). As averred in this Notice of Removal, the State's alleged

injuries arise at least in part from MilSpec AFFF. Accordingly, the State's claims are "for or

relating to" Removing Defendants' actions under color of federal office. 28 U.S.C. § 1442(a)(1).

### 3.    The "Colorable Federal Defense" Requirement Is Satisfied

35.    The third requirement, a "colorable federal defense," is satisfied by Removing

Defendants' assertion of the government contractor defense. The Ninth Circuit recognizes that

this defense supports removal under § 1442(a)(1). *See Leite*, 749 F.3d at 1124. At the removal

stage, a defendant need only show that its government contractor defense is "colorable." *Leite*,

749 F.3d at 1124 (quoting *Jefferson Cnty.*, 527 U.S. at 407); *see also, e.g.*, *Sawyer*, 860 F.3d at

254. "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the

statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517

F.3d at 139 (quoting *Willingham*, 395 U.S. at 406-07). At the removal stage, the inquiry "is

purely jurisdictional, and neither the parties nor the district courts should be required to engage

in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue."

*Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) (quoting *Kircher v. Putnam Funds Trust*,

547 U.S. 633, 644 n. 12 (2006)).[23] Moreover, "this inquiry is undertaken whilst viewing the facts

in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770,

783-84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual

sufficiency of the defendant's defense, the defendant should 'have the opportunity to present

---

[23] *See also Kraus v. Alcatel-Lucent*, Civil Action No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense.").

[his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (quoting

*Willingham*, 395 U.S. at 409).

36.     Under the government contractor defense, the defendant is not liable for alleged

defects or negligence with respect to military equipment or supplies "when (1) the United States

approved reasonably precise specifications; (2) the equipment conformed to those specifications;

and (3) the supplier warned the United States about the dangers in the use of the equipment that

were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. Removing

Defendants have alleged facts that satisfy these elements for purposes of removal.

37.     The requirement of "reasonably precise specifications" can be met by evidence

showing either (a) that the government's participation in the design of the product "amount[ed]

to more than a rubber stamping," or (b) that the government continued to purchase or use a

product after the government became aware that the product contained the alleged defect. *Ramey*

*v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems

Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber

stamping."  It created (and has updated) specifications governing AFFF formulation,

performance, testing, storage, inspection, packaging, and labeling.[24] Those specifications are

"reasonably precise," including in requiring the use of PFAS.[25] In addition, in the past and

continuing to the present, the DOD has purchased and used MilSpec AFFF with awareness of the

product's PFAS content and of the product's alleged risks. *Ayo*, 2018 WL 4781145, at *12

---

[24] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 5, *supra*.

[25] As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain
"fluorocarbon surfactants," all of which are members of the PFAS family.  Even since that express
requirement was removed from the specification, the use of PFAS has been implicitly mandated
because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance
requirements of the specification.

("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

38.     With respect to the second requirement, Removing Defendants' products appeared on the DOD Qualified Products Listing,[26]  which could have happened only if Naval Sea Systems Command had first determined that the products conformed to the MilSpec.[27] *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products. . . . There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); *AFFF I*, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

39.     Regarding the third requirement, the U.S. government was adequately informed regarding alleged product-related "dangers" to exercise its discretionary authority in specifying and procuring MilSpec AFFF. *Boyle*, 487 U.S. at 512. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.[28] Indeed, it is clear that the United States has long understood that AFFF may contain or break down into PFOS and/or PFOA, that AFFF constituents can migrate through the soil and

---

[26] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (both available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

[27] *See* DOD SD-6, *supra* note 7, at 1.

[28] *See, e.g.*, MIL-F-24385 §§ 3.16 & 4.7.16 (Rev. May 2, 1977).

potentially reach groundwater, and that it has been reported that this may raise environmental or health issues.[29] For example, by October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[30] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[31] By no later than 2001, DOD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."[32] In 2002, the U.S. Environmental Protection Agency ("EPA") issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.[33] More recently, in a November 2017 report to Congress, DOD acknowledged the concerns raised by the EPA regarding PFOS and PFOA in drinking water. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly

---

[29] *See, e.g.*, EPA, Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts, at 1-6 (Nov. 4, 2002).

[30] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[31] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

[32] EPA Presentation on Activities/Issues on Fluorosurfactants, March 16, 2001 (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1971-2 (D.S.C.)).

[33] *See* EPA, Revised Draft Hazard Assessment, *supra* note 29.

Page 19 – NOTICE OF REMOVAL

extinguishing petroleum-based fires."[34] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants,"[35] and even today the MilSpec contemplates the presence of "PFOS" and "PFOA" in AFFF formulations.[36] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); *AFFF I*, 2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military were not already aware, [it] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA's] stated concerns with PFOS/PFOA in drinking water . . . .").

40.     At a minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. 2011) ("A defendant is not required to warn the government where the government knew as much or more than the defendant contractor about the hazards of the product.") (internal quotation marks omitted). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d at 89-90.

---

[34] DOD, Aqueous Film Forming Foam Report to Congress, at 1-2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[35] MIL-PRF-24385F(4) § 3.2 (2020).

[36] *Id*. § 6.6 & Tables I, III; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

120140551.1 0033656-00196

41.    Removing Defendants' use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on Removing Defendants for alleged injuries that were caused in whole or in part by Removing Defendants' compliance with military specifications, the State is attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

42.    The MDL Court, based on an extensive record, has found that the government contractor defense asserted by 3M, Tyco, Chemguard, and other defendants presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

43.    Accordingly, Removing Defendants are entitled to remove this action to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

WHEREFORE, Removing Defendants respectfully remove this action from the Circuit Court of the State of Oregon, in and for the County of Multnomah, to this Court pursuant to 28 U.S.C. § 1442(a)(1).

DATED:  June 30, 2023                    STOEL RIVES LLP


                                         s/ Reilley D. Keating
                                         PER A. RAMFJORD, OSB No. 934024
                                         per.ramfjord@stoel.com
                                         REILLEY D. KEATING, OSB No. 073762
                                         reilley.keating@stoel.com
                                         Attorneys for Defendant 3M Company



DATED:  June 30, 2023                    LANE POWELL PC


                                         s/ Pilar C. French
                                         Pilar C. French, OSB No. 962880
                                         Ryan T. O'Hollaren, OSB No. 231160
                                         Telephone:  503.778.2100
                                         Attorneys for Tyco Fire Products LP and
                                         Chemguard, Inc.

120140551.1 0033656-00196

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing NOTICE OF REMOVAL on the following

named person(s) on the date indicated below by

    ☒   mailing with postage prepaid

    ☒   email

    ☒   notice of electronic filing using the CM/ECF system

to said person(s) a true copy thereof, contained in a sealed envelope if by mail, addressed to said

person(s) at his or her last known address(es) indicated below.

| | |
|---|---|
| Ellen F. Rosenblum<br>Lisa Udland<br>Sheila Potter<br>OREGON DEPARTMENT OF JUSTICE<br>100 SW Market Street<br>Portland, OR 97201<br>lisa.udland@doj.state.or.us<br>sheila.potter@doj.state.or.us<br>*Attorneys for Plaintiff State of Oregon* | William J. Jackson<br>John D.S. Gilmour<br>Lauren H. Shah<br>Ivan F. Morales<br>KELLEY DRYE & WARREN LLP<br>515 Post Oak Blvd., Suite 900<br>Houston, TX 77027<br>BJackson@kelleydrye.com<br>jgilmour@kelleydrye.com<br>lshah@kelleydrye.com<br>imorales@kelleydrye.com<br>*Attorneys for Plaintiff State of Oregon* |
| Keith A. Ketterling<br>Lydia Anderson-Dana<br>Elizabeth K. Bailey<br>Madeleine C. Holmes<br>STOLL STOLL BERNE LOKTING &<br>SHLACHTER P.C.<br>209 SW Oak Street, Suite 500<br>Portland, OR 97204<br>kketterling@stollberne.com<br>landersondana@stollberne.com<br>ebailey@stollberne.com<br>mholmes@stollberne.com<br>*Attorneys for Plaintiff State of Oregon* | David Zalman<br>Levi Downing<br>Elizabeth Krasnow<br>Julia Schuurman<br>KELLEY DRYE & WARREN LLP<br>3 World Trade Center<br>175 Greenwich Street<br>New York, NY 10007<br>dzalman@kelleydrye.com<br>ldowning@kelleydrye.com<br>ekrasnow@kelleydrye.com<br>jschuurman@kelleydrye.com<br>*Attorneys for Plaintiff State of Oregon* |

Matthew K. Edling
Victor M. Sher
Stephanie D. Biehl
Ashley B. Campbell
SHER EDLING LLP
100 Montgomery Street, Suite 1410
San Francisco, CA 94104
matt@sheredling.com
vic@sheredling.com
stephanie@sheredling.com
ashley@sheredling.com
*Attorneys for Plaintiff State of Oregon*

I further certify that I served the foregoing NOTICE OF REMOVAL on the following

named person(s) on the date indicated below by

☒ mailing with postage prepaid

☐ email

☐ notice of electronic filing using the CM/ECF system

to said person(s) a true copy thereof, contained in a sealed envelope if by mail, addressed to said

person(s) at his or her last known address(es) indicated below.

AGC CHEMICALS AMERICAS, INC.
5 East Uwchlan Avenue, Suite 201
Exton, Pennsylvania 19341
*Defendant*

AMEREX CORPORATION
2900 Highway 280 S, Suite 300
Birmingham, Alabama 35223
*Defendant*

ARCHROMA U.S., INC.
5435 77 Center Drive, Suite 10
Charlotte, North Carolina 28217
*Defendant*

ARKEMA INC.
900 First Avenue
King of Prussia, Pennsylvania 19406
*Defendant*

BASF CORPORATION
100 Park Avenue,
Florham Park, New Jersey 07932
*Defendant*

BUCKEYE FIRE EQUIPMENT COMPANY
110 Kings Road
Kings Mountain, North Carolina 28086
*Defendant*

75470315    CERTIFICATE OF SERVICE
9.1Page 2
–

THE CHEMOURS COMPANY
1007 Market Street
Wilmington, Delaware 19899
*Defendant*

CARRIER GLOBAL CORPORATION
13995 Pasteur Boulevard
Palm Beach Gardens, Florida 33418
*Defendant*

CHEMDESIGN PRODUCTS, INC.
Two Stanton Street
Marinette, Wisconsin 54143
*Defendant*

CLARIANT CORPORATION
500 East Morehead Street, Suite 400
Charlotte, North Carolina 28202
*Defendant*

CORTEVA, INC.
974 Centre Road
Wilmington, Delaware 19805
*Defendant*

DUPONT DE NEMOURS, INC.
974 Centre Road
Wilmington, Delaware 19805
*Defendant*

DYNAX CORPORATION
79 Westchester Avenue
Pound Ridge, New York 10576
*Defendant*

EIDP, INC.
974 Centre Road
Wilmington, Delaware 19805
*Defendant*

KIDDE PLC, INC.
Nine Farm Springs Road
Farmington, Connecticut 06032
*Defendant*

NATIONAL FOAM, INC.
141 Junny Road
Angier, North Carolina 27501
*Defendant*

CARRIER FIRE & SECURITY AMERICAS
CORPORATION
13995 Pasteur Boulevard
Palm Beach Gardens, Florida 33418
*Defendant*

DATED:  June 30, 2023

*s/ Reilley D. Keating*
REILLEY D. KEATING, OSB No. 073762
Telephone: 503.224.3380

*Attorneys for Defendant 3M Company*

75470315    CERTIFICATE OF SERVICE
9.1Page 3

—

120140551.1 0033656-00196